2001 ME 170

**TOWN OF KITTERY**

v.

**Jeffrey H. MacKENZIE et al.[1]**

Supreme Judicial Court of Maine.

Argued: Sept. 13, 2001.

Decided: Dec. 14, 2001.

1. The following were named as defendants by the Town of Kittery: Jeffrey H. and Brenda L. MacKenzie, Jo Ann Graf, Michael P. and Georgia L. Trussell, Dennis A. and Debra A. Dean, Frederick P. Straccia, Marlene Rae Jewett, Frank W. Jewett, Sylvia Eaton, Judith Jumper, and Marie Fecteau. Only four of the named defendants participated in the motion for summary judgment: Jeffrey H. and Brenda L. MacKenzie, Jo Ann Graf and Frederick P. Straccia. These four defendants are referred to collectively as MacKenzie.

Duncan A. McEachern (orally), McEachern & Thornhill, Kittery, for plaintiff.

John C. Bannon (orally), Murray Plumb & Murray, Portland, for defendants.

Panel: WATHEN, C.J.,* and CLIFFORD, RUDMAN, DANA,** SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Jeffrey H. MacKenzie appeals from the entry of a summary judgment by the Superior Court (York County, *Brennan, J.*) in favor of the Town of Kittery, determining that the Town's use of its right-of-way did not create or accept a highway, town way, or street that the Town must maintain pursuant to 23 M.R.S.A. § 3651 (1992). MacKenzie argues that the Town's right-of-way is a way that the Town must maintain pursuant to either the doctrine of dedication and acceptance or the public's prescriptive use. Because the Superior Court correctly applied the law to the uncontested material facts, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

[¶ 2] The uncontroverted statement of material facts may be summarized as follows: In 1927, the Town of Kittery acquired a four-acre parcel of land from William F. Bartlett located off the Stevenson Road. An express grant of a right-of-way, thirty feet in width to Stevenson Road across retained land by Bartlett, was conveyed with the four-acre parcel. The Bartlett deed expressly stated that the thirty-foot right-of-way was to be "specifically located by the Selectmen and to be fenced on the southwesterly side, at the expense of the Grantor [Bartlett] and the Grantee [Town]."

[¶ 3] The Selectmen physically located the right-of-way over the Bartlett property extending it to Stevenson Road. This right-of-way leading to Stevenson Road is commonly referred to as the "Dump Road." The Town never acquired a fee interest in the Dump Road. From 1927 until 1978, the Town used the right-of-way to access the Town gravel pit and later to access the Town dump. In 1978, the Town constructed a solid waste facility on the site of the old Town dump and constructed a new road that provided direct access from the site to Route 236. Because access to Stevenson Road from the dump was no longer necessary, the Town dead-ended the right-of-way by placing a mound of gravel at the end of the Dump Road abutting the solid waste facility. The Town then ceased to use, maintain, or otherwise keep the right-of-way in good repair.

[¶ 4] Following the initial conveyance to the Town in 1927, Alta W. Bartlett and her successors-in-interest continued to convey out portions of the larger parcel abutting the Dump Road right-of-way. In 1939, Alta Bartlett conveyed the Bartlett property, including the fee to the Town's right-of-way, to Frank and Frances Jewett, subject to the Town's right-of-way over the Dump Road to Stevenson Road. Jeffrey MacKenzie acquired his property through

---

* Wathen, C.J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

** Although not available at oral argument, Justice Dana participated in this opinion. "A qualified justice may participate in a decision even though not present at oral argument." M.R.App. P. 12(a).

the Bartlett–Jewett chain of title and built his home along the Dump Road after the Town ceased its use of the Dump Road in 1978. MacKenzie acquired both a right-of-way and a fee interest in the Dump Road.[2] The Dump Road is the exclusive access to Stevenson Road from several lots on the road.

[¶ 5] Seven years after the Town ceased using its right-of-way over the Dump Road, the Town, at the request of the abutting landowners, agreed to plow the Dump Road so that it would be accessible in the winter to police and other emergency vehicles. In 1998, the Town agreed to trim back some brush that had grown into the roadway in order to plow the Dump Road and to fix some potholes on the Dump Road, pending legal resolution of the status of the Dump Road.

[¶ 6] In 1999, the Town filed a complaint for a declaratory judgment seeking a declaration that the Town's use of the right-of-way did not establish an accepted town way and that the Town had no responsibility to maintain the right-of-way. MacKenzie counterclaimed seeking a declaration that the Town had an obligation to maintain the way. After hearing cross-motions for summary judgment, the court granted judgment for the Town stating that the "Dump Road is declared to be a private way, subject to existing deeded rights of way to the Town of Kittery as granted by Bartlett in 1927 and others who may have acquired such rights," and that the "Town is not required to maintain

or repair the Dump Road as a public way."[3] This appeal followed.

## II. DISCUSSION

■ [¶ 7] When reviewing a grant of summary judgment, we examine "the evidence in the light most favorable to the nonprevailing party to determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to a judgment as a matter of law." *Champagne v. Mid–Maine Med. Ctr.*, 1998 ME 87, ¶ 5, 711 A.2d 842, 844 (citing *Petillo v. City of Portland*, 657 A.2d 325, 326 (Me. 1995)). Summary judgment is appropriate "if the parties' Rule 7(d) [now 56(h)] statements, and the portions of the record referred to, do not reveal a genuine issue regarding a material fact." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655.

### A. Creation of a Town Way

[¶ 8] The basic issue in this case is whether there has been an acceptance of the Dump Road as a highway, town way, or street that would require the Town to maintain the Dump Road. *See* 23 M.R.S.A. § 3651 (1992).[4] The issue is not whether the Town has discontinued or abandoned the Dump Road. *See id.* §§ 3026, 3028(1) (1992).

■ [¶ 9] A town way is "[a]n area or strip of land designated and held by a municipality for the passage and use of the

---

2. MacKenzie, doing business as JMACK Builders, Inc., acquired by warranty deed from Frank W. Jewett, among others, the fee to the Jewett's portion of the Dump Road. In addition, MacKenzie acquired a right-of-way over the Dump Road from Hector W. Mac-Kenzie.

3. Although the Superior Court used the term public way, it can be inferred from the sen-

tence as a whole that the Superior Court found that the Dump Road was not legally established as a highway, town way, or street. *See* 23 M.R.S.A. § 3651 (1992).

4. "Highways, town ways, and streets legally established shall be opened and kept in repair so as to be safe and convenient for travelers with motor vehicles." 23 M.R.S.A. § 3651.

general public by motor vehicle." [5] *Id.* § 3021(3)(A) (1992). It can be inferred from this definition that a town way is a way that the public has the ability to access. In this sense, a town way is a type of public way.[6] For a town way to be held by a municipality it must be legally created. In Maine, a town way can be created: (1) by the statutory method of laying out and accepting a way;[7] (2) by dedication and acceptance; and (3) by prescriptive use. *Longley v. Knapp,* 1998 ME 142, ¶ 9, 713 A.2d 939, 942[8], *Glidden v. Belden,* 684 A.2d 1306, 1313 (Me.1996); *Town of Manchester v. Augusta Country Club,* 477 A.2d 1124, 1129 (Me.1984); *State v. Bunker,* 59 Me. 366, 370–71, 1871 WL 3116 (1871). The parties agree that the first method—laying out and accepting—did not occur. MacKenzie asserts that the Dump Road became a town way by the common law doctrine of dedication and acceptance or, in the alternative, through prescriptive use.

### i. Dedication and Acceptance

[¶ 10] To prove dedication, it must be clear that the grantor intended to dedicate the land in question for a public purpose. *Augusta Country Club,* 477 A.2d at 1129 (citing *Baker v. Petrin,* 148 Me. 473, 479–80, 95 A.2d 806, 810 (1953)). The public must accept the dedication by some affirmative act. *Id.* Assuming arguendo that MacKenzie could meet the dedication test, the record does not support any suggestion that there was an affirmative act by the Town to accept the right-of-way as a town way subject to repair and maintenance.

[¶ 11] MacKenzie relies on *Vachon v. Inhabitants of Town of Lisbon,* 295 A.2d 255 (Me.1972), to argue that the Town accepted the Dump Road as a town way by the affirmative act of laying out the right-of-way pursuant to the deed. In *Vachon,* "the plaintiff instituted a complaint against

---

**5.** Although not relevant to the case at bar, section 3021 also defines a town way as: "All town or county ways not discontinued or abandoned before July 29, 1976; and [a]ll state or state aid highways, or both, which shall be classified town ways as of July 1, 1982, or thereafter, pursuant to section 53." 23 M.R.S.A. § 3021(3)(B), (C) (1992).

**6.** *MacKenna v. Inhabitants of the Town of Searsmont,* 349 A.2d 760 (Me.1976), indicates that a "town way is in some respects distinguishable from a public way." *Id.* at 761–62, 763 n. 5 (citing *Bigelow v. Hillman,* 37 Me. 52 (1854)). The *Bigelow* Court distinguished a town way from a *public highway. Bigelow,* 37 Me. at 55. A town way was described as one designed for "the accommodation of particular localities" and established by the town. *Id.* A public highway was described as a way "designed for the accommodation of the great public, by opening thoroughfares from locations and sections of country remote from each other" and established by the County Commissioners. *Id.*

**7.** The enabling statute for the laying out of town ways and public easements is 23 M.R.S.A. § 3022 (1992 & Supp.2001). Section 3022 states in part that "[t]he municipal officers may ... lay out ... town ways .... They shall give written notice of their intentions posted at least 7 days in 2 public places in the municipality and in the vicinity of the way and shall in the notice describe the proposed way."

**8.** In *Longley v. Knapp,* 1998 ME 142, 713 A.2d 939, we stated that a town road may be established: "(1) by the statutory method of layout and acceptance; (2) by dedication and acceptance; and (3) by prescriptive use." *Id.* ¶ 9, 713 A.2d at 942 (citing *Avaunt v. Town of Gray,* 634 A.2d 1258, 1260 (Me.1993)). The case law cited in *Avaunt* to support this proposition discusses how a public way, not a town way, may be established. *See Chasse v. Town of Lyman,* 580 A.2d 1043, 1043 (Me. 1990); *Vachon v. Inhabitants of Town of Lisbon,* 295 A.2d 255, 259 (Me.1972). These cases are not contradictory because, as stated above, it can be inferred from the definition of a town way that town ways are a distinct type of public way.

the [Town] seeking to obtain an order directing the Town to improve and 'formally' accept certain land as a public street." *Id.* at 257. Asserting that the Maine School Building Authority owned the land, the Town denied responsibility for further action on its part or for maintaining or improving the road. *Id.* In April of 1958, the Town, through a conveyance, received two parcels of land. The grantors had recited in their deed that the second parcel "is conveyed and accepted with the agreement of the parties herein that it shall be dedicated, improved and accepted by the Town of Lisbon as a public street." *Id.* In May 1959, the Town, by warranty deed with unrestricted covenants, conveyed the second parcel to the Authority "subject to rights of the public to use the same as a public street." *Id.*

[¶ 12] In *Vachon,* we stated that although a formal vote of a municipality is an appropriate method of acceptance, it is not the exclusive way in which acceptance may be accomplished. *Id.* at 260. We concluded from the record that there were "at least two formal and affirmative acts of the municipality accepting the dedication of the land as a public street." *Id.* First, we noted that "the deed to the Authority dated May 27, 1959, in warranty form, and authorized by a vote of the Town, conveyed the land acquired by the Town on April 15, 1958, and did so 'subject to the rights of the public to use the same as a public street' " was an affirmative act. *Id.* at 261. Second, we noted that the "Town, in approving the 'Lease Agreement' [with the Authority], recognized and accepted the limitations and conditions placed on this property by the [original grantors]" and, therefore, accepted the second parcel as a public street. *Id.* at 262. In addition,

the conveyance was conditioned on the way being "accepted by the Town of Lisbon as a public street."

[¶ 13] The uncontroverted statement of material facts in this case does not support MacKenzie's argument that the Town accepted the Dump Road as a town way. Neither the Town's laying out of its right-of-way to access the gravel pit or later the Town dump, nor its maintenance or use of the right-of-way are affirmative acts similar to the affirmative acts in *Vachon* indicating acceptance. Accordingly, there is no material fact in dispute indicating that the Town accepted the Dump Road as a town way.

ii. Prescriptive Use

■ [¶ 14] MacKenzie contends there is a genuine issue of material fact as to whether the Dump Road was converted into a town way by over seventy years of prescriptive use. *See Bunker,* 59 Me. at 370–71 (town way); *Mayberry v. Inhabitants of Standish,* 56 Me. 342, 354, 356 (1868) ("We know of no case in this country where a way by dedication has been held to be established so as to impose any liability upon a city or town, without evidence of the assent of the corporation, express or implied.... [E]vidence of general uninterrupted public use of a road, *as a highway* for twenty years, is sufficient to charge a town with liability to keep it in repair." (citing *Jennings v. Inhabitants of Tisbury,* 71 Mass. (5 Gray) 73 (1855))).

■ [¶ 15] A prescriptive easement requires "continuous use for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence,[9] or by a use so open, notorious, visible, and

---

**9.** "Acquiescence implies 'passive assent or submission to the use, as distinguished from the granting of a license or permission given with the intention that the licensee's use may continue only as long as the owner continues to consent to it.' " *Augusta Country Club,* 477 A.2d at 1130 (quoting *Pace v. Carter,* 390 A.2d 505, 507 (Me.1978)).

uninterrupted that knowledge and acquiescence will be presumed." *Stickney v. City of Saco,* 2001 ME 69, ¶ 16, 770 A.2d 592, 601 (quoting *Shadan v. Town of Skowhegan,* 1997 ME 187, ¶ 6, 700 A.2d 245, 247); *Glidden,* 684 A.2d at 1317. "These elements must be proved by a preponderance of the evidence." *Stickney,* 2001 ME 69, ¶ 16, 770 A.2d at 601.

[¶ 16] MacKenzie is unable to prove that his and the public's use of the Dump Road was adverse. MacKenzie possesses a fee as well as a right-of-way over the Dump Road. Accordingly, his use is permissive. In addition, the public's use of the Dump Road to access the Town dump was permissive, not under a claim of right adverse to the Town. Having failed to prove a necessary element of prescriptive use,[10] MacKenzie's argument that the Dump Road is a town way that the Town must maintain pursuant to section 3651 fails.

[¶ 17] The record supports the Superior Court's conclusion that there is no genuine issue of material fact on any issue that would generate an obligation of the Town to maintain the Dump Road.

The entry is:

Judgment affirmed.

---

**10.** Because we determine that a public way by prescriptive use is not established on these facts, we need not address whether, without some affirmative act or acceptance of a maintenance obligation, a town may become obligated to maintain a way simply as a result of repeated public use that ripens into a public way by prescriptive use. As noted above, ¶ 9, all public ways are not town ways that generate a maintenance obligation. Our cases that have suggested that town roads or ways may be created by prescriptive use, such as *Longley v. Knapp,* or *State v. Bunker,* did not address town maintenance obligations and may have used the term "town way" or "town road" in ways that are synonymous with "public way" without implying the maintenance obligation for town ways established by 23 M.R.S.A. § 3651. *Mayberry v. Inhabitants of Standish* addressed a maintenance obligation, affirming a ruling that none existed in a way that had been used for sixty-five years.